902 F.2d 1009
 284 U.S.App.D.C. 183
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America,
v.
Darryl A. WILLS, Appellant.
 No. 89-3148.
 United States Court of Appeals, District of Columbia Circuit.
 May 16, 1990.
 
 Before WALD, Chief Judge, and MIKVA and BUCKLEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the appeal of the defendant from the judgment of the District Court, and was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that in No. 89-3148 the judgment is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Appellant, Darryl A. Wills, appeals from his conviction on one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and (b)(1)(C). Wills argues that the district court erred by refusing to grant a severance before trial began when it should have been aware that his co-defendants might present defenses hostile to Wills' interests. He also claims that once the court granted his severance mid-trial, its order of a new trial contravened the double jeopardy clause of the fifth amendment. We hold that the district court acted well within its discretion in initially denying the severance motion, and in granting it as soon as it was clear Wills' co-defendant would testify and implicate Wills. The new trial did not raise double jeopardy concerns because it was not provoked by government misconduct. We affirm the conviction.
 
 I. FACTS
 
 5
 On July 14, 1988, two police officers stopped a jeep for speeding. Three people were in the jeep, Thomas Smith, the driver, appellant Wills, and Wayne Washington. In the course of checking Smith's driver's license, the officers spotted a shot gun in the rear cargo area, and removed it for their safety. While checking Washington's and Wills' identifications, one officer saw a zip-locked bag with a tan rock-like substance in an overnight case, and spotted another pouch in which part of a handgun was visible. One officer also saw the driver throw a blue bag outside the vehicle. The defendants were ordered out of the jeep and placed under arrest. The officers recovered two weapons, 77 small zip-lock bags and one large plastic bag containing a substance which tested positive for cocaine.
 
 
 6
 All three men were indicted for possession with intent to distribute cocaine, 21 U.S.C. Secs. 841(a)(1) and (b)(1)(C) and 18 U.S.C. Sec. 2, and for using and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. Sec. 924(c). The cases were joined for trial. At the suppression hearing before trial, Smith provided damaging testimony regarding Wills' role in the crime. Based on that testimony, Wills filed a motion to sever his case on the ground that hostile defenses existed among the co-defendants. The district judge denied the severance motion, but ruled that the government could not use Smith's statements from the suppression hearing at the trial. Wills' counsel stated that, "If we work by those guidelines, then I have no problem with it." Transcript, March 8, 1989, at 8. Smith's counsel indicated that his client would not testify at the trial, while Washington's lawyer remained silent on whether his client would testify on his own behalf.
 
 
 7
 A trial of all three co-defendants began on March 8, 1989. The next day, after the government had closed its case, counsel for Washington advised Wills that Washington would take the stand, and that his testimony would implicate Wills. Wills promptly brought this to the court's attention. After Washington's counsel stated to the court that his testimony would prejudice Wills, the judge immediately granted Wills' motion for a mistrial and a severance.
 
 
 8
 Wills then moved to dismiss his indictment on the grounds that a new trial was precluded by the double jeopardy clause of the fifth amendment. The district court denied that motion, and Wills proceeded to trial separately. He was convicted by a jury on both counts. (The district judge subsequently granted Wills' motion for a judgment of acquittal on the firearm charge.) He was sentenced to 18 months on the cocaine possession count. He now appeals the denials of his initial severance motion, and his motion to dismiss on double jeopardy grounds.
 
 II. ANALYSIS
 A. Severance
 
 9
 The general rule is that defendants charged with jointly committing a criminal offense are to be jointly tried. See, e.g., United States v. Manner, 887 F.2d 317, 324 (D.C.Cir.1989), cert. denied, 110 S.Ct. 879 (1990). Joint trials are particularly favored where the "charges require presentation of the same evidence, testimony of the same witnesses and involve [three] defendants who are charged ... with participating in the same illegal acts." United States v. Sutton, 801 F.2d 1346, 1365 (D.C.Cir.1986). Rule 14 of the Federal Rules of Criminal Procedure provides, however, that if it appears a defendant will be prejudiced by joinder of defendants for trial, the court may order separate trials, grant a severance, or provide whatever other relief justice requires. The district court has wide latitude in determining whether sufficient prejudice exists to warrant a severance, and its decision regarding the need for severance will only be overturned for abuse of its discretion. United States v. Robinson, 432 F.2d 1348 (D.C.Cir.1970).
 
 
 10
 The denial of a severance may constitute an abuse of discretion only when the defendants present "conflicting and irreconcilable defenses." United States v. Wright, 783 F.2d 1091, 1093 (D.C.Cir.1986). A defendant has the burden of showing that a conflict is so prejudicial that differences are irreconcilable and that the jury will unjustifiably infer that the conflict itself shows that all co-defendants are guilty. See United States v. Caldwell, 543 F.2d 1333 (D.C.Cir.1974), cert. denied, 423 U.S. 1087 (1976). The defendant must show more than mere hostility among the co-defendants. Manner, 887 F.2d at 326.
 
 
 11
 Wills has not satisfied that burden. At the time of his original severance motion, Wills was concerned about co-defendant Smith's possible prejudicial testimony. Smith had already provided testimony at the suppression hearing negating Wills' defense that he was unaware of the contraband in the vehicle. But, the trial judge ordered that Smith's prior testimony not be used at trial, and Smith indicated that he would not testify at trial.
 
 
 12
 At that point in the proceedings, the burden was on Wills to show that if Washington were to testify, he would present a version of events that would irreconcilably conflict with Wills' defense. Wills made no such showing. We do not agree with Wills' contention that it was prejudicial error for the judge not to voir dire counsel for his co-defendant to check for potential hostility, particularly since Wills never requested such an inquiry.
 
 
 13
 Wills also suggests that he might have enjoyed a tactical advantage if he had been tried first. But, the trial court is under no obligation to sever a trial so that a defendant can secure advantage. See United States v. Ford, 870 F.2d 729 (D.C.Cir.1989). As we recently stated, given the "stringent standards for severance motions, coupled with our narrow scope of review," we are wary of expanding the "antagonistic defenses" prong of the severance doctrine. Manner, 887 F.2d at 326. We decline to extend it to cover the situation where the trial judge has properly dealt with a potentially antagonistic defense from one co-defendant, has no evidence that the other co-defendant might testify or might present a conflicting version of the facts, and has acted promptly to grant a severance motion as soon as the irreconcilable conflict in defenses became evident.
 
 B. Double Jeopardy
 
 14
 In a novel theory, Wills claims that double jeopardy barred a retrial in this case because the alleged misconduct of co-counsel deprived him of his right to have his guilt or innocence determined in his first trial. He claims that Washington's counsel was guilty of misconduct by waiting until the close of the government's case to disclose that his client would testify adversely to Wills.
 
 
 15
 This argument has two flaws, both fatal. First, the double jeopardy clause is triggered by governmental misconduct. See United States v. Dinitz, 424 U.S. 600 (1976) (absent prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution). It is designed as a disincentive to government misconduct that might goad a defendant into seeking a mistrial so as to give the government a second chance at the defendant. See Oregon v. Kennedy, 456 U.S. 667 (1982).
 
 
 16
 Despite Wills' claim that the language in Kennedy is broad enough to support his claim that co-counsel misconduct could also give rise to a double jeopardy bar, we find no support for his contention in Kennedy, nor in any other case. In Kennedy, the Supreme Court was reluctant to extend double jeopardy protection beyond situations in which the government intentionally provoked the defendant into moving for a mistrial. The Oregon Supreme Court had held that the government's mere "bad faith" or "harassment" of the defendant should suffice, even absent prosecutorial or judicial intent to bring on the request for a mistrial. The Court was not willing to extend double jeopardy protection that far. We find no support whatsoever in Kennedy for an even more extreme extension of double jeopardy protection to a case in which no governmental misconduct took place, certainly not under the circumstances here.
 
 
 17
 Even if the court were willing to expand the double jeopardy concept to co-counsel misconduct, this record does not support Wills' claim that co-defendant Washington's counsel engaged in any misconduct designed to goad Wills' counsel into seeking a mistrial. The opposite is true. As soon as the government presented its evidence, Washington's counsel told Wills' counsel that his client had decided to take the stand, and that he would likely testify adversely to Wills. When the court suggested they might proceed anyway, until Washington's testimony actually ventured into dangerous territory for Wills, Washington's counsel insisted that he believed his client's testimony would prejudice Wills. There was no evidence that this was anything other than a good faith determination by Washington's counsel that, given the government's evidence, it would be advantageous for Washington to take the stand. Accordingly, the judge determined that severance was warranted. Thus, Washington's counsel committed no misconduct. Wills' double jeopardy theory must be rejected.